[Crim. No. 12.  First Appellate District.—August 31, 1905.]

## THE PEOPLE, Respondent, v. WILLIAM PROCTOR, Appellant.

CRIMINAL LAW—LARCENY—FALSE PRETENSES.—In order to constitute the crime of larceny, the owner of the money stolen must not have intended to part with the property or the money stolen; and where the evidence shows that the prosecuting witness loaned the money to the defendant, thus parting with the title and possession of it, which was secured by reason of false and fraudulent representations knowingly and designedly made, no conviction can be sustained for larceny, the crime being that of obtaining money by false pretenses.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial.  Henry A. Melvin, Judge.

The facts are stated in the opinion of the court.

Aldrich & Gentry, for Appellant.

U. S. Webb, Attorney-General, for Respondent.

COOPER, J.—Defendant is charged in the information with the crime of grand larceny committed on the nineteenth day of December, 1904, by feloniously stealing, aking, and carrying away one hundred and eight dollars in gold and silver coins, the property of Emeline Tyson.  He was found guilty as charged, and sentenced to a term of six years in San Quentin.  His motion for a new trial was denied, and he prosecutes this appeal from the judgment and order denying his motion.

The facts relied on to sustain the verdict are stated by the prosecuting witness, Emeline Tyson, and are in substance as follows: Emeline Tyson was past seventy-six years of age on Friday, December 16, 1904, when she first met defendant at Niles station and had a moment's conversation with him.  He came to her house, which was about one mile from the station, the following morning, and sold her a pair of spectacles.  While there they engaged in a general conversation.  He told her that he had been a widower for about fifteen years, had traveled around a great deal, but was tired of liv-

ing that way, that she was just the woman he had been look-
ing for, that it was a case of "love at first sight." His love-
making seems to have been agreeable, as he promised to call
again that (Saturday) evening. He did not, however, call on
Saturday evening, but did call Sunday morning, and made
an excuse for not having called Saturday evening. He called
again Sunday evening, and the prosecuting witness gives an
account of the transaction in the following language: "He
asked me to marry him, and I told him I would if I found
him to be a perfect gentleman and able to take care of me.
He said he was plenty able to do it, that he had an old house
and lot in Oakland that he was trading off for a new house.
He said he had five hundred and fifty dollars in the bank,
and needed sixty dollars more to make the deal or he would
lose the bargain. He said he wanted the new house for us to
live in. Then I agreed to let him have the money. He said
he would give me good security for it, that he had a bill of
sale of an auto worth five hundred dollars, and that he would
give me a bill of sale as security. I promised then to try
and get the sixty dollars for him the next morning. I saw
him the next morning (Monday) at my home. He said he
had just received a letter from his sister in the East and that
they had sold out and she was coming on and that he would
soon have a lot of money. He said he was giving me good
security and would have the money on the 15th of January.
He said 'You just as well make it out now one hundred and
eight; I want a little Christmas money, too, and I am giving
you good security for it and will pay it back on the 15th.'
His sister was coming and would have a lot of money. Then
I got the money and let him have it, one hundred and eight
dollars lawful money of the United States. Then he, gave
me the bill of sale to an automobile. When he paid this
money back on the 15th of January I was to give him back
the bill of sale."

The witness further testified in cross-examination: "There
was no agreement on his part to use any of this money for
me. I was simply lending him so much money and he was
going to give me this false bill of sale. I would not have let
him have this money on this bill of sale if he had not have
been going to marry me. The only reason I had for handing
this money to this defendant upon that 19th day of Decem-

ber, 1904, were that we were engaged to be married, that he said he would give me good security, this bill of sale of a fine automobile, and that he would be plenty able to pay it back on the 15th of January.''

The only question that need be discussed is as to whether or not the verdict of larceny is supported by the facts as stated. Larceny is the felonious stealing or taking away the personal property of another. The title to the property is not changed, but remains in the party from whom the property was taken.

Where the owner parts with the possession and title by reason of false and fraudulent representations, knowingly and designedly made, the crime is not larceny, but that of obtaining money by false pretenses.

The distinction that runs through the books, as stated by the judges and text-writers, is, that to constitute larceny the owner of the property stolen must not have intended to part with the title to it, while in false pretenses he did intend to part with the property and the title thereto, but the intention was brought about by fraudulent circumstances. If the transaction has not been completed, and the owner did not intend to part with the title to the property, and the defendant procured the possession by means of false and fraudulent representations, the crime is larceny. The court below correctly stated the law to the jury in its instruction wherein it said: ''If you find from the evidence that the money which is the subject of the alleged larceny in this action was obtained by the defendant from the prosecuting witness, Emeline Tyson; and that the said Emeline Tyson voluntarily gave the money to the defendant; and that she, Emeline Tyson, did not expect to get any part of this money back from the defendant; and that said Emeline Tyson intended to part with the ownership as well as the possession of said money; and that at the time the money was so obtained it was understood by the said Emeline Tyson that said money was to be used by the defendant on his own account, then the defendant is not guilty of larceny, even though you should find that the defendant fraudulently obtained the money by means of false pretenses. You must judge of the intent which governed the acts of the complaining witness, Emeline Tyson, in handing over the money by the knowledge possessed by her at the time she

handed over the money, and not by any facts which she may have learned afterwards.''

The prosecuting witness loaned the money to defendant. She parted with the possession and title to it. She believed at the time that defendant was to be her future husband. She believed him to be a perfect gentleman, and that the automobile was good security. She was the victim of misplaced confidence and affection, but defendant did not commit larceny in getting her money.

The judgment and order are reversed.

Hall, J., and Harrison, P. J., concurred.